# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 9014 | **DATE** | 6/4/2003 |
| **CASE TITLE** | Direct Marketing Concepts vs. Kevin Trudeau, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. In sum, Shop America's Counterclaim sustains the same fate as Trudeau's claims and attempted claims -- the bar of both claim preclusion and issue preclusion. As is true of Trudeau's claims, of course, the issue may be revisited if the Ninth Circuit were to reject Judge Real's rulings in the California Action.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JUN 0 5 2003 | |
| | Notified counsel by telephone. | | date docketed | 56 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 6/4/2003 | |
| | | 03 JUN -4 AM 11:22 | date mailed notice | |
| SN | courtroom deputy's initials | Date/time received in central Clerk's Office | SN | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIRECT MARKETING CONCEPTS, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KEVIN TRUDEAU, ROBERT BAREFOOT, )<br>SHOP AMERICA (USA) L.L.C., SHOP )<br>AMERICA MARKETING GROUP, LLC, )<br>)<br>Defendants. )<br>_____ )<br>)<br>KEVIN TRUDEAU, ROBERT BAREFOOT, )<br>SHOP AMERICA (USA) L.L.C., SHOP )<br>AMERICA MARKETING GROUP, LLC, )<br>)<br>Counterplaintiffs, )<br>)<br>v. )<br>)<br>DIRECT MARKETING CONCEPTS, INC., )<br>)<br>Counterdefendant, )<br>)<br>and )<br>)<br>TRIAD ML MARKETING, INC., and )<br>KING MEDIA, INC., )<br>)<br>Third-Party Counterdefendants. ) | Case No. 02 C 9014<br><br>DOCKETED<br><br>JUN 0 5 2003 |

## MEMORANDUM OPINION AND ORDER

This Court's April 30, 2003 memorandum opinion and order ("Opinion I") granted summary judgment against Kevin Trudeau ("Trudeau") on his Counterclaim against Direct Marketing Concepts, Inc. ("Direct Marketing") and Triad ML Marketing Group ("Triad") because of the operation of claim preclusion stemming from Trudeau's earlier lawsuit in a California District Court

(the "California Action").[1] Because Trudeau's cohorts in that Counterclaim, Shop America (USA) L.L.C. and Shop America Marketing Group L.L.C. (collectively "Shop America," treated as a plural noun) had urged that they should not be similarly barred for several reasons, including their absence as parties plaintiff in the California Action, this Court directed Direct Marketing to reply to Shop America's several arguments. Direct Marketing has done so effectively, and this Court finds the Shop America effort to separate themselves from Trudeau to be more disingenuous than ingenious.

In their responsive memorandum and statement of facts, the Shop America entities acknowledge the first of them to be a subsidiary of another corporation of which Trudeau is the majority shareholder, while the other Shop America entity is admittedly a company "owned by Trudeau." Shop America coyly add that the two limited liability companies have "no formal affiliation" (whatever that may mean).

But if their memorandum and factual statement were a securities prospectus, Shop America--and worse, their counsel--would be guilty of securities law violations via both material misrepresentations and the omission of material facts. Not only is each of the Shop America entities a limited liability

---

[1] For the same reason that Opinion I spoke only of Trudeau, this opinion will make only minimal reference to Triad.

2

company rather than a corporation, a difference that is substantively material for present purposes, but Shop America and their counsel have carefully avoided the critical factor that Trudeau is the designated manager of each company.[2] And importantly, each of the Shop America companies has opted to be managed by its manager rather than by its members, a choice given critical importance by 805 ILCS 180/13-5(b)(1) and 180/15-1(b)(2) (emphasis added to the latter):

> Subsection 13-5(b)(1) in relevant part:
>
> Each manager is an agent of the company for the purpose of its business....
>
> * * *
>
> Subsection 15-1(b) in relevant part:
>
> In a manager - managed company:
> * * *
> (2) except as provided in subsection (c) of this Section [inapplicable to the present issue], any matter relating to the business of the company may be exclusively decided by the manager....

In light of Trudeau's self-created total control over both Shop America entities by virtue of his managership, coupled with his ownership interest in both, it would represent the height of artificiality--an impermissible exaltation of form (and indeed not much formal separation at that) over substance--to view the

---

[2] Disturbingly, the Trudeau-Shop America Answer to Direct Marketing's Complaint in this action denied that Trudeau was the manager of both companies (Answer ¶10), asserting instead that he is only the majority "shareholder" of each (id.). That denial and assertion are not only false but materially so.

3

Shop America entities as anything other than in privity with Trudeau as an individual. Indeed, given the allegations of the Counterclaim in which Trudeau and Shop America have linked their claims against Direct Marketing as they have done, it would distort reality to validate their attempt to isolate themselves from each other as they have sought to do.

With the "parties or their privies" component of claim preclusion thus having been resolved against Shop America, all that remains is to determine whether the Shop America claims against Direct Marketing in the Counterclaim here stem from the "same core of operative facts" as Trudeau's claims against Direct Marketing in the California Action.

On that score it cannot be gainsaid that the core element of the Shop America (and Trudeau) Counterclaim in this action is the Direct Marketing infomercial "A Closer Look," which was the express target of the California Action. That is obvious from Counterclaim Count I ¶¶53-55, Count II ¶¶61-62 and Count III ¶¶65 and 68. Shop America attempts to escape by urging instead that its claims are based on lost sales from Trudeau's different infomercial, produced after Judge Real had dismissed the California Action, so that Shop America could not have been a party plaintiff in that case.

Yet not a word in the Counterclaim at issue adverts to the later infomercial. Instead it speaks only of asserted

4

misrepresentation in Direct Marketing's "A Closer Look" infomercial. And Trudeau and Shop America joined in the Counterclaim here in asserting their claims collectively, without differentiating between themselves in any fashion.

As Direct Marketing has corrected pointed out, one of the Shop America entities has existed since 1999 and was engaged in the business that is the subject of the Counterclaim with Direct Marketing (and Triad) well before the production of Trudeau's later (and competing) infomercial. And Trudeau's splintering off of the second Shop America entity as a marketing company in November 2002 cannot successfully distance it from Trudeau himself to the extent that he could not advance the same claim (that follows from the doctrine of privity). So if Direct Marketing did indeed engage in misrepresentations in its "A Closer Look" infomercial, as the Trudeau-Shop America Counterclaim asserts, that conduct must be viewed as harming Shop America as well as Trudeau (as the Counterclaim also asserts). And any assertedly lost sales from the later Trudeau infomercial simply constituted later-sustained damages stemming from the collision of the same infomercials.

If this sounds familiar to readers of this Court's May 30, 2003 memorandum opinion and order ("Opinion II"), there is a very good reason. Opinion II rejected, on issue preclusion grounds, Trudeau's effort to advance a claim based on later-sustained

5

damages arising out of the same core of operative facts that had generated Trudeau's earlier damages -- the grounds, for the California action. By parity of reasoning, Shop America's attempt to convert the Counterclaim here into a lawsuit about damages sustained after Judge Real had dismissed the California Action fares no better.

This current effort to separate out the strands of identity of Trudeau and his managed companies, as well as the identity of their claims, as though Trudeau has somehow worn one hat individually and has worn another hat in his exclusive and total control of both Shop America companies, is precisely the kind of manipulative litigation tactic that justifies judicial rejection (see, e.g., 18 A Charles Wright, Arthur Miller & Edward Cooper, Federal Practice and Procedure: Jurisdiction 2d §4457, at 521 & n.23 (2d ed. 2002) and numerous cases cited there; cf. Tice v. American Airlines, Inc., 162 F.3d 966, 973 (7th Cir. 1999)).

In sum, Shop America's Counterclaim sustains the same fate as Trudeau's claims and attempted claims--the bar of both claim preclusion and issue preclusion. As is true of Trudeau's claims, of course, the issue may be revisited if the Ninth Circuit were to reject Judge Real's rulings in the California Action.

                                                _____
                                                Milton I. Shadur
                                                Senior United States District Judge

Date: June 3, 2003